McGRAW-EDISON COMPANY, Appellant, v. STANDARD FINANCIAL CORPORATION, Respondent.

First Department, February 27, 1964.

*Joseph Miller* of counsel (*Uttal, Miller & Dubin,* attorneys), for appellant.

*Henry A. Greenburg* of counsel (*Mound, Isaacs & Greenburg,* attorneys), for respondent.

BOTEIN, P. J.  Plaintiff appeals from an order entered May 16, 1963 granting defendant's motion for partial summary judgment dismissing the third cause of action set forth in the complaint.

Plaintiff is a manufacturer of laundry equipment.  Defendant is a commercial factor.  One Joseph A. Grimes was engaged in the purchase and resale of laundry equipment, and his transactions were financed by defendant.  In connection with a sale by Grimes to Lester W. Bowen of equipment to be acquired by Grimes from plaintiff's Speed Queen division, Grimes submitted a credit application to defendant.  Defendant in turn issued, and sent to plaintiff as well as Grimes, a letter dated June 1, 1959 approving the application, on condition that Grimes' contract with Bowen "must be submitted for discount within 90 days" and that "Dorothy Bowen must sign notes and contract."  On June 17, 1959 Grimes notified defendant by letter that he had assigned to plaintiff a portion of his interest in the Bowen contract in the amount of $6,680 and authorized defendant to remit that sum to plaintiff "at the time the contract is purchased by you."  On July 2, 1959 plaintiff's assistant credit manager Knollenberg wrote defendant that plaintiff had an interest of $6,630 [*sic*] in the Bowen transaction, the letter stating that Grimes "wrote you on June 17, assigning this amount to me at the time the contract is purchased by you."

On January 10, 1960 Grimes sent defendant a letter identical with his June 17, 1959 letter except that the amount of $6,680 was changed to $10,000. On January 18, 1960 Knollenberg wired defendant, " Please wire me when assignments $10,000.00 on Bowen Lawrence Mass and $6,794.00 Perla Ware Mass are received. Originals apparently sent to you at incorrect address." On January 20, 1960 defendant wired in reply, " Have received authorization from Grimes Re Perla and Bowen. Contracts." On April 12, 1960, Knollenberg wrote defendant with reference to the Perla and Bowen transactions, stating with regard to the latter, " On this deal, we have an authorization from Mr. Grimes that you are to send us $10,000.00 at the time the retail contract is purchased."

The merchandise ordered from plaintiff by Grimes was shipped to Bowen, but defendant did not purchase Grimes' contract with Bowen, for the reason that Grimes had incorporated his business and had failed to comply with defendant's request that the documents relating to the Bowen transaction should be prepared to reflect that fact. Grimes became insolvent and plaintiff, by its third cause of action, seeks to charge defendant with the sum of $10,000.

The documentary evidence above detailed shows a clear and reiterated understanding on plaintiff's part that defendant was to be under no obligation to it until " the time the retail [Bowen] contract is purchased " by defendant from Grimes — which was never done. To establish an obligation Knollenberg refers in his affidavit to a telephone call from defendant's assistant treasurer Krause in which " Krause stated Grimes had made arrangements with Standard to finance coin-operated-laundry stores and that Grimes was to submit the name of his customer for equipment to Standard Financial which was to approve the credit of said prospective buyer. Standard Financial would notify Grimes or McGraw Edison [plaintiff] of the credit approval, and Grimes was then to assign a portion of the contract to McGraw Edison. Both McGraw Edison and Grimes were then to advise Standard of the amount of the assignment. After receipt of the assignment was confirmed, McGraw Edison was to ship merchandise to the customers of Grimes, and Standard was to pay McGraw Edison the amount of the assignment."

It is to be observed that under this purported arrangement defendant became committed to pay plaintiff once the latter shipped goods to a customer of Grimes, whether or not defendant purchased the contract between Grimes and the customer, and indeed even if Grimes never actually tendered the contract

for discount. Not only is such an extraordinary arrangement inconsistent with the documentary evidence, but Knollenberg admitted in pretrial examination that Krause had never told him that " if Standard once approved the credit of an applicant, Standard obligated itself to purchase that account and to remit funds to Speed Queen ". Moreover, the fact that defendant's credit approvals might be conditional, as in fact the Bowen approval was, plainly belies any contention that plaintiff expected a credit approval to be followed inevitably by purchase of a contract.

We agree with Special Term that there is no triable issue. Accordingly the order entered May 16, 1963 should be affirmed, with costs.

STEUER, J. (dissenting). The papers submitted on this motion present, in my opinion, a substantial issue, and consequently summary judgment should not issue. It appears that plaintiff is a manufacturer of laundry machinery. Prior to the incidents in suit, it had as a customer one Grimes, who was a dealer and sold the machines to his own customers. Grimes had no credit with plaintiff and sales were made to him on a c. o. d. basis only. Grimes then made arrangements with defendant for the latter to finance his purchases. The method employed was for Grimes to resell machines to his customers on credit. Defendant would then purchase the customer's contract. Grimes would then make an assignment to the plaintiff of so much of the purchase price of the contract as represented his cost from the plaintiff. When plaintiff received notification from defendant that it had received such an assignment, it would ship the goods to Grimes.

The transaction in question arose when Grimes made a sale of a number of machines to one Bowen on a conditional sales contract for $14,923. He submitted this contract, together with an assignment of $6,680, to plaintiff, for defendant's purchase. On June 1, 1959, defendant notified Grimes and plaintiff that it would purchase the contract if the contract and the notes provided for in it were signed by Bowen's wife and presented within 90 days. It took Grimes some time to comply with these changes and, in the meantime, he had formed a corporation to conduct his business. Because of this, defendant concluded certain changes in the Bowen contract became necessary, and defendant also required certain authorizations from Grimes' corporation. It returned the documents to him. More than six months after defendant's original conditional approval of the Bowen contract, namely, on June 20, 1960, plaintiff wired

defendant inquiring whether it had received an additional assignment from, Grimes on the Bowen contract (making a total of $10,000) and on another contract, not here involved. Defendant replied that it had. At that time Grimes had not complied with defendant's conditions. He never did and defendant never purchased the Bowen contract. Upon receipt of the advice from defendant that it had received the assignment, plaintiff shipped the goods to Grimes. Grimes never paid and is now insolvent.

It may be conceded that the assignment of a portion of the proceeds of the Bowen contract did not in and of itself give plaintiff any rights against defendant. The Bowen contract never having been purchased, there was not then or thereafter anything to assign. However, the gist of plaintiff's complaint is not that it had rights under the assignment as such. The claim is that defendant represented that it would purchase contracts and that defendant knew that, upon receipt of advice of purchase and assignment, goods would be shipped. Clearly if defendant had represented that it had purchased the Bowen contract and received an assignment, knowing that plaintiff would rely and act on the information, it would be liable. That defendant had such information is not seriously disputed. The only question is whether defendant made a representation that it had purchased the Bowen contract. While no representation *in haec verba* is shown, there are facts from which a representation might reasonably be inferred. These facts are that defendant did notify plaintiff of conditional approval of the purchase. The conditions were neither unusual nor particularly significant, and there is good reason to believe that all parties expected them to be met. More than six months later, a more than adequate time to have these conditions met, plaintiff inquired whether an assignment had been received. Defendant's answer that it had, without any further reference to the state of negotiations on the purchase, and with the knowledge of the relatively unimportant objections to the purchase as originally submitted, might well induce the belief that at that late date the contract had been purchased.

It is not suggested that this is the necessary conclusion, namely, that a representation was in fact made. But these facts do raise a triable issue as to whether or not this is the case.

McNALLY, STEVENS and WITMER, JJ., concur with BOTEIN, P. J.; STEUER, J., dissents in opinion.

Order, entered on May 16, 1963, affirmed, with $20 costs and disbursements to respondent.